# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SUSAN M. VERMAAT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 16 C 2757 |
| | ) |
| BROWN & JOSEPH, LTD., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Brown & Joseph, Ltd.'s (BJL) motion for summary judgment and motion to strike. For the reasons stated below, the motion for summary judgment and motion to strike are granted.

## BACKGROUND

Plaintiff Susan M. Vermaat (Vermaat) allegedly began working for BJL in 2006. Vermaat then allegedly resigned in 2007 and was rehired in 2013. In October 2013, Vermaat was diagnosed with a serious illness and was off work until January 2014. In May 2014, Vermaat allegedly again became ill and was placed on Family Medical Leave status. BJL then allegedly agreed to give Vermaat a voluntary layoff to allow her to collect monies through unemployment compensation benefits. In

1

November 2014, when the unemployment benefits ran out, BJL allegedly rehired Vermaat. In January 2015, Vermaat's employment was allegedly again terminated and, in accordance with an "Employment Termination Contract" (Termination Agreement), Vermaat was to be paid severance pay to allow her to pay bills while she waited for Social Security disability benefits. Vermaat includes in her complaint a claim alleging that BJL failed to accommodate her alleged disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* BJL now moves for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©; *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in

a light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

**DISCUSSION**

I. Waiver in Exchange for Severance Package

BJL argues that Vermaat waived her right to pursue an ADA claim against BJL in the Termination Agreement. An employee can waive her right to bring an ADA claim, but that waiver must be "knowing and voluntary." *West v. Illinois State Bd. of Educ.*, 2007 WL 4162814, at *5 (N.D. Ill. 2007)(internal quotations omitted)(quoting *Baptist v. City of Kankakee*, 481 F.3d 485, 490 (7th Cir. 2007)); *see also Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1129 (7th Cir. 1997)(indicating that "the prerogative of litigating one's . . . ADA claims in federal court is the type of important right the relinquishment of which requires a knowing and voluntary waiver").

It is undisputed that Vermaat signed the Termination Agreement. In response to BJL's statement of facts, Vermaat responds that the fact is "denied." (RSF Par. 10). Vermaat, however, offers no evidence to support such a denial or any valid objection to the facts. Vermaat has not shown that the exhibit presented by BJL is anything other then an authentic copy of the Termination Agreement with Vermaat's

signature on it. (RSF Par. 10). Vermaat's objection is particularly without merit since she freely admitted at her deposition that she signed the Termination Agreement. (V Dep. 20). It is undisputed that pursuant to the Termination Agreement, Vermaat was to receive $5,000 in severance pay. (RSF Par. 10). Vermaat explained that the $5,000 sum was an amount that she believed she would need to pay her bills until she was able to begin collecting Social Security disability benefits. (V Dep. 18-20).

It is undisputed that, in the Termination Agreement, Vermaat agreed not to pursue any claims against BJL related to her employment. (TA Par. 2). Vermaat signed the Termination Agreement in which she acknowledged that she had an opportunity to consult with an attorney. (TA Par. 2). Vermaat now claims that she never read the Termination Agreement. (SAF Par. 15). Vermaat, however, fails to point to evidence that would contradict the evidence in the record that indicates that Vermaat had every opportunity to read the Termination Agreement before signing it. To the extent that Vermaat may not have read the agreement, her own statements indicate that it was not because BJL failed to provide her with an opportunity to do so. Vermaat indicates that she signed the Termination Agreement without considering the ramifications because she wanted the $5,000. (SAF Par. 16). Vermaat now also contends that she signed the Termination Agreement under duress. However, she points to no evidence that shows she was forced to sign the Termination Agreement. *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d

562, 569 (7th Cir. 1995)(stating that "one cannot successfully claim duress as a defense to a contract when he had an alternative to signing the agreement").

The undisputed facts also show that it was Vermaat who set in motion the Termination Agreement offer. Vermaat offers no evidence to legitimately dispute that she informed BJL in an email to BJL's general manager that "it was too early for her to be back working as it took too much out of her," and indicating that she was going to seek Social Security disability benefits. (RSF Par. 9). In response, a week later, the parties entered into the Termination Agreement.

Vermaat also now argues that although she signed the Termination Agreement indicating she had an opportunity to consult with counsel, she was not given an opportunity to bring home the Termination Agreement and have it reviewed by her boyfriend/partner Kenneth J. Merlino (Merlino), who is a licensed attorney. Even if the court accepted Vermaat's version of facts as to consultation with an attorney that contradicts her signed affirmation in the Termination Agreement, nothing would have prevented Vermaat from doing so immediately after signing the Termination Agreement and before cashing the check provided to her by BJL. Yet, the undisputed facts show that even after the Termination Agreement was signed, Vermaat never contested the agreement and readily cashed the check provided to her by BJL. BJL has pointed out that Vermaat has never offered to return the $5,000. *See Hampton v. Ford Motor Co.*, 561 F.3d 709, 717 (7th Cir. 2009)(noting that the plaintiff never "offered to return to [the employer] the consideration she received for

signing the Waiver"). Vermaat thus received the benefit of the bargain and took the money offered to her. BJL in turn is entitled to receive the benefit it bargained for in the Termination Agreement. If Vermaat did not ultimately receive Social Security disability benefits as hoped after spending the $5,000, and, in retrospect, regretted her decision to take the severance pay offered by BJL, that is not BJL's fault and it is not a basis to vacate or rescind the valid contract entered into by Vermaat. The undisputed facts show that Vermaat knowingly and voluntarily waived her right to bring the ADA claim brought in this action.

II. Reasonable Accommodation

BJL argues that the undisputed facts show that it provided Vermaat with reasonable accommodations. For an ADA failure-to-accommodate claim, a plaintiff must establish: (1) that she "is a qualified individual with a disability," (2) that "the employer was aware of h[er] disability," and (3) that "the employer failed to reasonably accommodate the disability." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 224 (7th Cir. 2015). The undisputed facts show that BJL provided Vermaat with many accommodations over several years to help her deal with her illness. Vermaat remained in her job while she was on leave from November 2013 to late January 2014. Vermaat admits that BJL actually made a new department for her to work in when she returned. (RSF Par. 3). Vermaat stated at her deposition: "They made a department for me." (V Dep. 36). In May 2014 when Vermaat

indicated that she was too ill to work, BJL voluntarily agreed to provide Vermaat with a layoff so that she could essentially be on medical leave and collect unemployment benefits. It is undisputed that when those benefits ran out, BJL rehired Vermaat and placed her in a new position. The undisputed facts show that after Vermaat indicated she was no longer able to continue working at BJL, BJL offered her the $5,000 severance package. Vermaat indicated at her deposition that BJL regularly gave her leave to go to doctors appointments, treatments, and time off for any needed surgery. (V Dep. 83). Vermaat further admits that her supervisor suffered himself from the same illness and that she thought he cared about her illness. (RSF Par. 11).

BJL also argues that from November 2014, when Vermaat was rehired until the termination of her employment in January 2015, Vermaat never requested a reasonable accommodation. Vermaat admitted at her deposition that she never made any requested accommodation in the pertinent time frame other than continued patience on the part of BJL to allow her to go to doctor appointments. (V Dep. 83). There is no evidence that she was ever denied a request to go to such an appointment.

Vermaat now asserts in a self-serving declaration that "sometime" during the relevant period she requested that she be allowed to work at home. (V Decl. Par. 16). Vermaat has also filed a declaration by Merlino. BJL has moved to strike the declarations. Vermaat never sought leave to file the declarations and the filings

7

were untimely and not in compliance with the court's deadlines and are stricken. The court further notes that even if Vermaat's declaration were not stricken, much of it would be improper since Vermaat sought to rehabilitate her deposition testimony by presenting contradictory statements in her declaration. *Pain Ctr. of SE Indiana, LLC v. Origin Healthcare Sols. LLC*, 2017 WL 347461, at *5 (S.D. Ind. 2017)(stating that "[w]hen a party submits its own declaration to supplement prior deposition testimony, the court disregards any portion of the declaration that conflicts with the prior testimony"). Many of the statements contained in the declarations are also not based upon personal knowledge and are inadmissible hearsay.

The court also notes that even if the court accepts Vermaat's claim that she requested leave to work at home, the undisputed facts show that her position required supervision and there is no indication in the undisputed facts that Vermaat would have been able to perform the necessary functions of her work from home. Finally, Vermaat's own statements indicating her inability to continue in her job show that she was not able to perform the essential functions of her job. Based on the above, BJL's motion for summary judgment is granted.

## CONCLUSION

Based on the foregoing analysis, BJL's motion for summary judgment and motion to strike are granted.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   November 13, 2017

9